# NO. 25-1228

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ELLENOR ZINSKI,

*Plaintiff-Appellee,*

v.

LIBERTY UNIVERSITY, INC.,

*Defendant-Appellant.*

On Appeal from the United States District Court for the Western District of Virginia, Case No. 6:24-cv-00041-NKM-CKM

## APPLICATION FOR PERMISSION TO APPEAL
## UNDER 28 U.S.C. §1292(b)

Mathew D. Staver, *Counsel of Record*
Horatio G. Mihet
Daniel J. Schmid
Avery B. Hill
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
(407) 875-0770
court@LC.org
hmihet@LC.org
dschmid@LC.org
ahill@LC.org
*Attorneys for Defendant-Appellant*

## <u>DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1(a) and Local Rule 26.1(a), Defendant-Appellant, Liberty University, Inc., a nonstock corporation incorporated under the laws of the Commonwealth of Virginia, hereby states that it does not issue stock and that no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................... iii

INTRODUCTION ...................................................................................1

FACTS NECESSARY TO UNDERSTAND THE QUESTIONS PRESENTED .....2

I.    Plaintiff's Suit Against Liberty University.........................................3

II.   Liberty University's Defenses..........................................................5

III.  The District Court's Denial of Liberty University's Motion to Dismiss. ..........5

IV.   The District Court's Order Certifying Interlocutory Appeal...........................8

QUESTIONS PRESENTED.....................................................................11

RELIEF SOUGHT .................................................................................12

REASONS WHY THE PETITION SHOULD BE GRANTED.............................13

I.    Binding Precedent From This Court Demonstrates Why Liberty University's
      Title VII Statutory Exemptions Are Subject To Interlocutory Appeal Under 28
      U.S.C. §1292(b). ..........................................................................13

II.   Liberty University's Title VII Statutory Exemption Defenses Easily Satisfy
      The Requirements Of Section 1292(B)..............................................14

      A.    Liberty University's appeal involves controlling questions of law. .........14

      B.    There is substantial ground for difference of opinion as to the district
            court's construction of Title VII's statutory exemptions for Liberty
            University.............................................................................16

            1.    The settled law on this question is unclear and this Court has not
                  addressed this issue yet, so there is substantial ground for difference
                  of opinion as to the district court's interpretation of Sections 702 and
                  703....................................................................................16

            2.    Court have disagreed as to what the law is on the exemptions
                  available under Sections 702 and 703 of Title VII, warranting a
                  finding of substantial ground for difference of opinion......................19

      C.    The resolution of Liberty University's defenses under Sections 702 and
            703 would materially advance the termination of this litigation..............20

CONCLUSION ....................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Ahrenholz v. Bd. of Trustees of the Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000)..................................................................14

*Billiard v. Charlotte Catholic High School*,
101 F.4th 316 (4th Cir. 2024) ...............................................................20

*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020) .................................................................. 3, 7, 17

*Bowles v. Russell*,
551 U.S. 205 (2007) ..........................................................................1

*Bradley v. DentalPlans.com*,
2024 WL 5158791 (D. Md. Dec. 18, 2024) ........................................17

*Clark Const. Grp., Inc. v. Allglass Sys., Inc.*,
2005 WL 736606 (D. Md. Mar. 30, 2005) ........................... 14, 15, 21

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949) ..........................................................................1

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010)..............................................................17

*Doe v. Dewees*,
2022 WL 2195187 (D. Md. June 17, 2022).........................................17

*EEOC v. Mississippi Coll.*,
626 F.2d 477 (5th Cir. 1980)..............................................................20

*Ekstrom v. Congressional Bank*,
2021 WL 119000 (D. Md. Jan. 13, 2021)............................................16

*Fannin v. CSX Transp. Inc.*,
873 F.2d 1438 (4th Cir. 1989).............................................................21

*Fitzgerald v. Roncalli High Sch., Inc.*,
73 F.4th 529 (7th Cir. 2023) ...............................................................20

*Franklin v. Clea AI Inc.*,
2024 WL 4457975 (D. Md. Oct. 10, 2024) .........................................17

*Hoffenberg v. United States*,
2004 WL 2338144 (S.D.N.Y. 2004) .....................................................2

*In re Jartran, Inc.*,
886 F.2d 859 (7th Cir. 1989)................................................................2

*In re Nichols*,
    2014 WL 4094340 (D. Md. Aug. 15, 2014) .......................................19

*Int'l Refugee Assistance Project v. Trump*,
    404 F. Supp. 3d 946 (D. Md. 2019).....................................................17

*Kennedy v. St. Joseph's Ministries, Inc.*,
    657 F.3d 189 (4th Cir. 2011)............................................... 14, 15, 16

*Kennedy v. Villa St. Catherine, Inc.*,
    2010 WL 9009364 (D. Md. June 16, 2010).................................... 14, 15, 17, 21

*KPMG Peat Marwick, L.L.P. v. Estate of Nelco, Ltd., Inc.*,
    250 B.R. 74 (E.D. Va. 2000)........................................................ 19, 21

*Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc.*,
    41 F.4th 931 (7th Cir. 2022) .................................................... 20, 21

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
    516 U.S. 199 (1996) ...................................................................11

**Statutes**

28 U.S.C. §1291 .....................................................................13
28 U.S.C. §1292 ............................................................... passim
42 U.S.C. §2000bb-1..............................................................12
42 U.S.C. §2000e ............................................................. passim

**<u>INTRODUCTION</u>**

The issue presented in Liberty University's appeal can be boiled down to a single question: is a religious institution such as Liberty University exempt from Title VII liability when it terminates an employee for violating its sincerely held religious beliefs, Doctrinal Statement, and employment requirements. Title VII provides explicit statutory exemptions from Title VII liability for religious institutions, in general, 42 U.S.C. §2000e-1(a), and religious educational institutions, in particular, 42 U.S.C. §2000e-2(e). As the district court recognized, "whether Sections 702 and 703 entitle a religious employer to discriminate on the basis of transgender status when such discrimination accords with the employer's religious beliefs and could plausibly constitute religious discrimination," presents "a novel question of law in the Fourth Circuit." (ECF No. 37, 8.)[1] Though the district court denied Liberty University's motion to dismiss on these defenses, and others, it certified its Order for interlocutory appeal under 28 U.S.C. §1292(b). (ECF No. 57.)

Because timely filing of a notice of appeal is a jurisdictional requirement, *Bowles v. Russell*, 551 U.S. 205, 214 (2007), and the district court's order satisfies the requirements of the collateral order doctrine, *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949); (Doc. 11, 1), and because of Liberty University's vital

---

[1] References to the district court's docket are notated by "ECF No." Citations to this Court's docket entries are notated as "Doc."

1

interest in protecting against First Amendment irreparable injury that cannot be effectively reviewed after discovery and trial, Liberty University timely noticed its appeal to this Court from the district court's denial of its motion to dismiss. (Doc. 1.) Nevertheless, out of an abundance of jurisdictional caution and because the district court's order also satisfies the requirements of 28 U.S.C. §1292(b), Liberty University contemporaneously filed a Motion to Certify Interlocutory Appeal under Section 1292(b) in the district court. (ECF No. 41.)

The district court noted Liberty University's jurisdictional "belt-and-suspenders approach" in its Order certifying interlocutory appeal (ECF No. 57, 1 & n.1), and granted Liberty University's Section 1292(b) motion. (ECF No. 57.)[2] For the reasons that follow and those articulated by the district court below, the Court should accept Liberty University's appeal.

## FACTS NECESSARY TO UNDERSTAND THE QUESTIONS PRESENTED

As the district court noted in its Order certifying an interlocutory appeal, the relevant facts from Plaintiff's Complaint and from Liberty University's statutory and constitutional defenses "<u>were not even in dispute</u>." (ECF No. 57, 8 (emphasis original).) In the district court's Order that was certified for interlocutory appeal

---

[2]     Other courts have similarly recognized this approach as a method of perfecting jurisdiction in the court of appeals. *E.g.*, *Hoffenberg v. United States*, 2004 WL 2338144, *4 (S.D.N.Y. 2004) (citing *In re Jartran, Inc.*, 886 F.2d 859 (7th Cir. 1989)).

under Section 1292(b), the district court further noted that "[t]he parties do not dispute the central premise that Liberty fired Zinski because of [Zinski's] transgender status; they solely dispute whether Title VII proscribes such action, and/or whether Liberty may claim any statutory or constitutional defenses to Title VII liability." (ECF No. 37, 1.) And, as the district court stated, "[f]ew facts are needed to appreciate the legal question we face." (ECF No. 37, 3 (quoting *Bostock v. Clayton Cnty.*, 590 U.S. 644, 653 (2020)).)

## I.      Plaintiff's Suit Against Liberty University.

On July 29, 2024, Plaintiff Zinski filed the Complaint against Defendant Liberty University alleging that Liberty University violated Title VII of the Civil Rights Act by terminating Zinski's employment. (ECF No. 1, Complaint, ¶23.) In February 2023, Jonathan Zinski was hired by Liberty University as an Information Services Apprentice at the IT Helpdesk. (Compl., ¶10.) According to Zinski's allegations, on June 25, 2023—after Zinski's initial 90-day employment period—Zinski participated in an employment review with Liberty University officials. (Compl., ¶13.) A mere ten days later, Zinski informed Liberty University that despite applying for employment as a male—Jonathan Zinksi—he now "identified as a trans woman, had been undergoing hormone replacement therapy ("HRT")," and that Zinski intended to legally change names from Jonathan to Ellenor. (Compl., ¶14.)

Liberty University informed Zinski that Zinski was in violation of Liberty University's sincere religious convictions, Doctrinal Statement, and religiously based employment requirements, and that Zinski's employment was being terminated. (Compl., ¶18.) As was clear from Liberty University's termination letter, permitting employees of Liberty University to fundamentally ignore the biological reality of their God-given birth would violate Liberty University's sincerely held religious beliefs. (ECF No. 12-2, at 1.) Liberty University's Doctrinal Statement was provided to Zinski as part of the onboarding process, and Zinski was required to acknowledge it upon accepting employment at Liberty University. (*Id.*) Zinski did— in fact—acknowledge Liberty University's sincere religious beliefs and Doctrinal Statement upon accepting employment at Liberty University (*id.*), and acknowledged that Liberty University "employ[s] a workforce that acts in accordance with [its Doctrinal Statement] in order to protect [its] religious mission." (*Id.*) Zinski acknowledged all of this despite knowing that he was executing his plan to deny his God-given sex in contravention to the Doctrinal Statement Zinski acknowledged and was four months into a hormone regimen that specifically contradicts and conflicted with an employment requirement that Zinski knew Liberty University considered as a condition of employment. (*See id.* (quoting Liberty University Doctrinal Statement).) Zinski ignored that employment requirement, deceptively accepted, acknowledged, and signed a document indicating compliance

with the requirement, and flouted Liberty University's sincere religious convictions and practices. (*Id.*) Zinski then filed suit, alleging Title VII discrimination.

## II.     Liberty University's Defenses.

Liberty University moved to dismiss Zinski's claims on the basis that Sections 702 and 703 of Title VII, 42 U.S.C. §§2000e-1(a), 2000e-2(e), exempt Liberty University, as a religious institution, in general, and a religious educational institution, in particular, from Zinski's claims because it terminated Zinski on the basis of its sincere religious convictions and religious employment requirements. (ECF No. 12, 7-14.) Liberty University also moved to dismiss Zinski's claims on the basis that Zinski's claims were barred by the First Amendment ecclesiastical abstention doctrine (ECF No. 12, 14-17), ministerial exception (ECF No. 12, 24-37), and freedom of association (ECF No. 12, 37-49). Liberty University also moved to dismiss on the grounds that the Religious Freedom Restoration Act prohibited application of Title VII to Liberty University. (EF No. 12, 18-24.)

## III.    The District Court's Denial of Liberty University's Motion to Dismiss.

The district court denied Liberty University's motion to dismiss. (ECF No. 37.) The district court's discussion nevertheless demonstrated, in the district court's own opinion, that Liberty University raised substantial and controlling questions of law to which there was a substantial ground for difference of opinion. (*See* ECF No. 57, 7.) A brief recitation of the district court's ground for denying Liberty

University's motion to dismiss demonstrates why it was appropriate for certification under 28 U.S.C. §1292(b).

In its discussion of the issues surrounding Liberty University's Motion to Dismiss, the district court recognized that "few facts" were necessary for the adjudication of Liberty University's defenses. (ECF No. 37, at 3.) In other words, the questions surrounding Liberty University's Motion to Dismiss were pure legal questions surrounding a matter that has not yet been conclusively determined by the this Court or Supreme Court. (*See id.* at 6 ("Several of [Liberty University's] defenses present questions of first impression in the Fourth Circuit."); *id.* at 8 ("Liberty's arguments present a novel question of law in the Fourth Circuit: whether Sections 702 and 703 entitled a religious employer to discriminate on the basis of transgender status when such discrimination accords with the employer's religious beliefs and could plausibly constitute religious discrimination.").)

As to the questions for which there is a potential difference of opinion, the district court explicitly noted that even the statute appears "torn between two competing purposes," and that it was not persuaded that "the Fourth Circuit caselaw on this issue is fully developed or intended to be dispositive of this dispute." (ECF No. 37, at 11-12.) In fact, the district court noted that this Court's prior precedent on this question "sheds little light on what it means for discrimination to occur on a religious basis." (*Id.* at 17 (emphasis original).) Further expounding on this premise,

the district court noted that this Court's precedent "does not address, at any granular level, how Title VII should apply where a religious institution's employment decision plausibly constitutes religious discrimination and sex discrimination alike." (*Id.*) It likewise noted that the plain text of the statutory exemptions in Sections 702 and 703 appear to be ambiguous and not directly dispositive of Liberty University's defenses. (*Id.* at 26.)

The district court further concluded that many of the arguments raised by Liberty University in its Motion to Dismiss "carry substantial weight" and that there are federal judges who have adopted the approach taken by Liberty University. (ECF No. 37, 30.) When discussing the various interpretations of Title VII's exemptions, one held by Liberty University and one held by Plaintiff, it noted "both [are] reasonable" and that "neither interpretation persuades us to the exclusion of the other." (*Id.* at 31.) Though *Bostock v. Clayton County*, 590 U.S. 644 (2020), purported to address *some* of the issues raised by Plaintiff's Complaint here, the district court noted that even "*Bostock* does not address the issue before us" because "*Bostock* does not address the applicability of Sections 702 and 703." (ECF No. 37, at 35-36.)

As to Liberty University's constitutional defenses, the district court likewise noted that some constitutional defenses present unique questions of first impression in this Circuit. (ECF No. 37, at 54 ("Noting that the Fourth Circuit has not issued

further guidance on the collision of Title VII and expressive association, we find that this question presents a question of first impression for this Court and the Fourth Circuit.").

## IV. The District Court's Order Certifying Interlocutory Appeal.

Upon timely motion by Liberty University, the district court held that Liberty University's defenses, and the district court's decision concerning those defenses, raised pure and controlling questions of law to which there was substantial grounds for difference of opinion, the resolution of which by this Court would materially advance the ultimate termination of this action. (ECF No. 57, 7.) The district court therefore certified its Opinion and Order (ECF No. 37; ECF No. 60)[3] for interlocutory appeal. (ECF No. 57.)

*First*, the district court held that Liberty University's defenses under Title VII's statutory exemptions in Sections 702 and 703 are pure and controlling questions of law. "As to the first requirement of Section 1292(b), *we are easily persuaded that this question is a controlling question of law*." (ECF No. 57, 7 (emphasis added).) "First, it is **controlling** because (i) the Court actually decided the issue and (ii) has the Court reached the opposite result—*i.e.*, by deciding that Sections 702 and 703 <u>do</u> exempt religious institutions from sex discrimination

---

[3]     Because the district court granted Liberty University's Section 1292(b) motion (ECF  No. 57), it modified its prior Order (ECF No. 38) on April 3, 2025, to include the certification for interlocutory appeal. (ECF No. 60.)

provisions of Title VII—Liberty would be wholly immune from liability." (ECF No.

57, 7-8 (emphasis original) (cleaned up).)

**_Second_**, the district court held that there is substantial ground for difference

of opinion.

> "[G]enuine doubt" exists as to the correct legal standard to be applied
> (i) the relevant statutory provisions are susceptible to multiple
> interpretations, (ii) the legislative history supports our decision but has
> been rendered less apt by subsequent judicial construction of the statute,
> (iii) laudable policy outcomes exist on both sides, and (iv) the Fourth
> Circuit has stated that the question is one of first impression in its
> jurisdiction. . . . _These factors, both as a matter of litigation and
> jurisprudence, strongly suggest that this is no ordinary question, and
> that genuine doubt exists as to its correct resolution_.

(ECF No. 57, 8-9 (cleaned up) (emphasis added).)

The district court concluded: "We are ultimately persuaded that this question

generates a substantial ground for difference of opinion based on the writings of the

Fourth Circuit and the Supreme Court." (ECF No. 57, 9.) Because the Supreme

Court suggested that how Section 702's doctrines (among others) "protecting

religious liberty interact with Title VII are questions for future cases, too," the district

court held that prior decisions were "provisional" and that "[s]uch a warning would

not likely accompany this issue if there were no grounds for disagreement." (ECF

No. 57, 10.) "Together, the writings of the Fourth Circuit and the Supreme Court

indicate that courts—rather than just parties—harbor substantial differences of

opinion on this question. We therefore conclude that the second element of Section 1292(b) is satisfied." (ECF No. 57, 11.)

***Third***, Liberty University's appeal advances this ultimate termination of the litigation. In fact, the district court found that it was a "certainty" that prevailing on appeal would result in a termination of the entire case. (ECF No. 57, 11.)

> Zinksi's sole claim in this litigation is that Liberty violated Title VII by engaging in sex discrimination, and the question to be certified is whether Liberty may be exempt from the prohibition on sex discrimination under Sections 702 and/or 703 as a religious institution. Thus, resolution of this question in Liberty's favor would be "completely dispositive of the litigation."

(ECF No. 57, 11.) Indeed, as the Court held, "there is no 'may' in this case." (*Id.*) Rather, "[i]t is a near certainty that Liberty would be saved from significant pretrial effort and expense if the Fourth Circuit were to reverse—since Liberty would be thus exempt from Title VII scrutiny as a matter of law." (*Id.*)

*     *     *

In sum, the district court found: "We now conclude that this question constitutes a controlling question of law generating a substantial difference of opinion, the resolution of which by the Fourth Circuit may terminate this litigation." (ECF No. 57, 7.) In so holding, the district court certified its Order for interlocutory appeal under 28 U.S.C. §1292(b). (ECF No. 60.)

(1)    Whether Title VII's statutory exemptions for religious institutions in general, 42 U.S.C. §§2000e-1(a), and religious educational institutions, in particular, 42 U.S.C. §2000e-2(e), exempt Liberty University from claims under Title VII's general prohibition on sex-based discrimination when Liberty University terminates an individual for violating its sincerely held religious beliefs, Doctrinal Statement, and religiously based employment requirements.[4]

(2)    Whether the First Amendment's ecclesiastical abstention doctrine exempts Liberty University from liability for Title VII claims when it terminates an employee for violating its sincere religious beliefs, Doctrinal Statement, and

---

[4]    In its Order, the district court found that this was the only question appropriate for certification under 28 U.S.C. §1292(b). (ECF No. 57, 6-7.) But the plain language of the statute compels the conclusion that it is not merely questions, but "orders" that are certified for appeal. 28 U.S.C. §1292(b) ("When a district judge, in making in a civil action an *order* not otherwise appealable under this section, shall be of the opinion that such *order* involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the *order* may materially advance the ultimate termination of the litigation, he shall so state in writing in such *order*." (emphasis added)). Indeed, "[a]s the text of §1292(b) indicates, appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)) (emphasis original). As such, Liberty University presents this Court with each question that warrants dismissal of Plaintiff's claims against it. Although not articulated as grounds for accepting this appeal under Section 1292(b), each question presented would be fully developed in briefing in this appeal.

religiously based employment requirements, and the adjudication of a plaintiff's claims would require inquiry into Liberty University's sincere religious convictions.

(3)    Whether the First Amendment's ministerial exemption doctrine exempts Liberty University from liability for Title VII claims when it terminates an employee for violating its sincerely held religious beliefs, Doctrinal Statement, and religiously based employment requirements.

(4)    Whether the First Amendment's freedom of association exempts Liberty University from liability for Title VII claims when it terminates an employee for violating its sincerely held religious beliefs, Doctrinal Statement, and religiously based employment requirements and who espouses an identity and beliefs directly contrary to Liberty University's core religious mission.

(5)    Whether the Religious Freedom Restoration Act, 42 U.S.C. §2000bb-1(c), which operates "as a kind of super statute, displacing the normal operation of other federal laws," *Bostock v. Clayton Cnty.*, 590 U.S. 644, 682 (2020), shields Liberty University from liability under Title VII when it terminates an employee for violating its sincerely held religious beliefs, Doctrinal Statement, and religiously based employment requirements.

## RELIEF SOUGHT

Liberty University's seek reversal of the district court's order (ECF No. 37) denying its Motion to Dismiss, and a dismissal of Plaintiff's claims against Liberty

University on the grounds that Liberty University is exempt from Title VII claims under Sections 702 and 703 of Title VII, that the First Amendment's ecclesiastical abstention doctrine, ministerial exception, and freedom of association protects Liberty University from liability for its religiously based employment decisions, and that the Religious Freedom Restoration Act prohibits the imposition of Title VII liability on a religious institution for its religiously grounded employment decisions.

## REASONS WHY THE PETITION SHOULD BE GRANTED

Interlocutory decisions of the district court that may not be otherwise appealable under the final judgment rule, 28 U.S.C. §1291, may be certified on an interlocutory basis if the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b). As the district court concluded (ECF No. 57), its decision on Liberty University's motion to dismiss easily satisfies the criteria for certification of an immediate interlocutory appeal. This Court should grant the motion, accept jurisdiction over the entire appeal, and reverse the district court.

**I.     Binding Precedent From This Court Demonstrates Why Liberty University's Title VII Statutory Exemptions Are Subject To Interlocutory Appeal Under 28 U.S.C. §1292(b).**

This Court has unequivocally held that orders involving Title VII's statutory exemptions for religious organizations, 42 U.S.C. §2000e-1 and 42 U.S.C. §2000e-

2(a), "clearly satisfy[y]" the requirements of Section 1292(b). *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 195 (4th Cir. 2011). Sections 702 and 703 of Title VII plainly, as a matter of binding precedent, involve "pure questions of law" and the "resolution of it terminates the case." *Id.* Liberty University's Motion to Dismiss (ECF No. 11) was substantially grounded on these exemptions, and the district court's adjudication of those defenses admittedly involved pure questions of law for which substantial grounds for difference of opinion exists and that resolution by this Court in Liberty University's favor would materially advance the termination of this case. *Kennedy* compels acceptance of the appeal here.

## II. Liberty University's Title VII Statutory Exemption Defenses Easily Satisfy The Requirements Of Section 1292(B).

### A. Liberty University's appeal involves controlling questions of law.

A "controlling question of law" under Section 1292(b) is "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Clark Const. Grp., Inc. v. Allglass Sys., Inc.*, 2005 WL 736606, *2 (D. Md. Mar. 30, 2005) (quoting *Ahrenholz v. Bd. of Trustees of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000)). *See also Kennedy v. Villa St. Catherine, Inc.*, 2010 WL 9009364, *1 (D. Md. June 16, 2010), *rev'd in part sub nom Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189 (4th Cir. 2011) (same).

In *Kennedy*, the district court noted that "the Order addressed whether a statute, 42 U.S.C. §2000e-1(a), exempts a religious institution from liability when

the religious discrimination it purportedly commits take the form of religious harassment." 2010 WL 9009364, at *1. In other words, the District of Maryland was faced with the question of the proper interpretation of Section 702 of Title VII and its application in a particular termination decision. *Id.* The court held that the proper interpretation of Section 702 is a controlling question of law. *See id.* ("It is clear that in this case the question posed is indeed a controlling question of law."). This Court affirmed that conclusion with equal clarity. *Kennedy*, 657 F.3d at 195 ("the requirements of Section 1292(b) are clearly satisfied in this case").

Here, because Liberty University raised Sections 702 and 703 as a defense to Plaintiff's claims, the proper interpretation of those defenses presents pure questions of law identical to that certified for an appeal in *Kennedy*. Indeed, as the district court's order recognized, to adjudicate Liberty University's Motion to Dismiss on Sections 702 and 703, the court was necessarily required to review "the statutory text," "draw from legislative history," and "interpret[] the statute." (ECF No. 37, at 25.) In other words, this district court's decision plainly noted that adjudication of Liberty University's defenses involved "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Clark Const.*, 2005 WL 736606, *2. Moreover, the district court's adjudication of Liberty University's Motion to Dismissed required "few facts." (ECF No. 37, at 3.) The district court's

Order involves a controlling question of law which "clearly satisfies" the requirements of Section 1292(b). *Kennedy*, 657 F.3d at 195.

The district court found that its decision involved a "**pure question of law**" and that it was controlling. (ECF No. 57, 7-8 (emphasis original).) "As to the first requirement of Section 1292(b), *we are easily persuaded that this question is a controlling question of law*." (ECF No. 57, 7 (emphasis added).) Indeed, "[f]irst, it is **controlling** because (i) the Court actually decided the issue and (ii) has the Court reached the opposite result—*i.e.*, by deciding that Sections 702 and 703 <u>do</u> exempt religious institutions from sex discrimination provisions of Title VII—Liberty would be wholly immune from liability." (ECF No. 57, 7-8 (emphasis original) (cleaned up).) This Court should hold the same.

**B.    There is substantial ground for difference of opinion as to the district court's construction of Title VII's statutory exemptions for Liberty University.**

**1.    The settled law on this question is unclear and this Court has not addressed this issue yet, so there is substantial ground for difference of opinion as to the district court's interpretation of Sections 702 and 703.**

Courts frequently find substantial grounds for a difference of opinion where, as the Court recognized here (ECF No. 37, at 38), "the court of appeals of the circuit has not spoken on the issue," or also—as here—novel and difficult questions of first impression are presented." *Ekstrom v. Congressional Bank*, 2021 WL 119000, *3 (D. Md. Jan. 13, 2021) (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir.

2010). *See also Bradley v. DentalPlans.com*, 2024 WL 5158791, *6 (D. Md. Dec. 18, 2024) (same); *Franklin v. Clea AI Inc.*, 2024 WL 4457975, *5 (D. Md. Oct. 10, 2024) (same). Put another way, "[i]f controlling law is unclear, there may be substantial grounds for difference of opinion for purposes of §1292(b)." *Int'l Refugee Assistance Project v. Trump*, 404 F. Supp. 3d 946, 950 (D. Md. 2019) (quoting *Couch*, 611 F.3d at 633). *See also Doe v. Dewees*, 2022 WL 2195187, *2 (D. Md. June 17, 2022) (same).

Here, as the district court recognized in its order (ECF No. 37, at 38), there is a substantial ground for difference of opinion. While it is certainly true that questions of first impression do not *alone* warrant a finding of substantial grounds for disagreement, *Kennedy*, 2010 WL 9009364, *2, that is not all that is present in Liberty University's motion. The Supreme Court made clear in *Bostock v. Clayton County*, "worries about how Title VII may intersect with religious liberties" gave the Court "deep concern [about] preserving the promise of the free exercise of religion enshrined in our Constitution." 590 U.S. 644, 681-82 (2020) (cleaned up). And the Supreme Court specifically noted that the "express statutory exception for religious organizations" would "*in other cases* … merit careful consideration." *Id.* at 682. Indeed, how the Title VII statutory exemptions and the other free exercise defenses "protecting religious liberty interact with Title VII are questions for future cases." *Id.* at 682. Thus, while noting the significant concern for ensuring Title VII's

guarantees of religious exercise remain robust, it preserved those questions for a case in which it was directly implicated. *This is that case*.

Moreover, here, the district court recognized that Liberty University's interpretation of Sections 702 and 703 are the "most textually faithful" to the exemptions of Title VII. (ECF No. 37, 31.) If Liberty University raised the most textually faithful interpretation of the relevant statutory provisions (a textually faithful conclusion that has been followed by a host of other Article III jurists), yet received a different opinion from the Court on that very interpretation, there are plainly legitimate grounds for difference of opinion.

The district court unequivocally agreed:

> "[G]enuine doubt" exists as to the correct legal standard to be applied (i) the relevant statutory provisions are susceptible to multiple interpretations, (ii) the legislative history supports our decision but has been rendered less apt by subsequent judicial construction of the statute, (iii) laudable policy outcomes exist on both sides, and (iv) the Fourth Circuit has stated that the question is one of first impression in its jurisdiction. . . . These factors, both as a matter of litigation and jurisprudence, strongly suggest that this is no ordinary question, and that genuine doubt exists as to its correct resolution.

(ECF No. 57, 8-9 (cleaned up).)

The district court concluded: "We are ultimately persuaded that this question generates a substantial ground for difference of opinion based on the writings of the Fourth Circuit and the Supreme Court." (ECF No. 57, 9.) Because the Supreme Court suggested that how Section 702's doctrines (among others) "protecting

religious liberty interact with Title VII are questions for future cases, too," the district court held that the Supreme Court's prior decisions were "provisional" and that "[s]uch a warning would not likely accompany this issue if there were no grounds for disagreement." (ECF No. 57, 10.) "Together, the writings of the Fourth Circuit and the Supreme Court indicate that courts—rather than just parties—harbor substantial differences of opinion on this question. We therefore conclude that the second element of Section 1292(b) is satisfied." (ECF No. 57, 11.)

### 2. Court have disagreed as to what the law is on the exemptions available under Sections 702 and 703 of Title VII, warranting a finding of substantial ground for difference of opinion.

The district court's finding that there was substantial ground for difference of opinion on the questions at issue in its Order is well grounded in the law. Substantial grounds for difference of opinion exists "if a difference of opinion exists *between courts* on a given controlling question of law, creating the need for interlocutory appeal to resolve the split or clarify the law." *KPMG Peat Marwick, L.L.P. v. Estate of Nelco, Ltd., Inc.*, 250 B.R. 74, 82 (E.D. Va. 2000) (emphasis original). "What matters is whether courts themselves disagree as to what the law is." *Id.* at 83. *See also In re Nichols*, 2014 WL 4094340, *3 (D. Md. Aug. 15, 2014) (same). This is true of the proper interpretation of Sections 702 and 703 of Title VII.

As the district court noted (ECF No. 37, at 38; ECF No. 57, 8-10), other courts and judges, including jurists sitting on this Court, have adopted the identical position

to Liberty University here and argued that a religious institution is wholly exempt from Title VII employment claims when the employment-related decision arose from or was connected to its religious beliefs. *See, e.g.*, *Billiard v. Charlotte Catholic High School*, 101 F.4th 316, 335 (4th Cir. 2024) (King, J.) ("a straightforward reading of § 702 of Title VII bars Billard's [sex] discrimination claim."); *Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc.*, 41 F.4th 931, 946 (7th Cir. 2022) (Easterbrook, J., concurring); *Fitzgerald v. Roncalli High Sch., Inc.*, 73 F.4th 529, 534 (7th Cir. 2023) (Brennan, J., concurring) ("So when the exemption applies, all of Title VII drops out." (cleaned up)); *EEOC v. Mississippi Coll.*, 626 F.2d 477, 485 (5th Cir. 1980). Nevertheless, the district court reached a different conclusion. (EFF No. 37.) In other words, courts have wrestled with and disagreed about what the law is surrounding Title VII's statutory exemptions. Those separate conclusions *alone* demonstrate substantial grounds for difference of opinion.

### C. The resolution of Liberty University's defenses under Sections 702 and 703 would materially advance the termination of this litigation.

Finally, the district court concluded that this Court's resolution of the appeal in Liberty University's favor would materially advance the termination of this litigation. (ECF No. 57, 11.) Controlling questions of law that have the potential to materially advance the termination of the litigation are "narrow question[s] of pure law whose resolution will be completely dispositive of the litigation, either in a legal or practical way, whichever way it goes." *Fannin v. CSX Transp. Inc.*, 873 F.2d 1438,

*5 (4th Cir. 1989). *See also KPMG*, 250 B.R. at 78 (same). Put another way, "the appellate court's resolution of the controlling question of law should 'serve to avoid a trial or otherwise substantially shorten the litigation.'" *Kennedy*, 2010 WL 9009364, *4 (quoting *Clark Const.*, 2005 WL 736606, *4)). Here, there is no question a decision in Liberty University's favor would materially advance the termination of the litigation. Indeed, if Liberty University's interpretation of Sections 702 and 703 are correct, then—as Judge Easterbrook held—"all of Title VII drops out." *Starkey*, 41 F.4th at 946. And, if Title VII's statutory provisions wholly exempt Liberty University from liability for any claim made on the basis of its religion— which it does—then there would be no trial on Plaintiff's claims.

As the district court recognized, a decision in Liberty University's favor would result in a termination of the entire case.

> Zinksi's sole claim in this litigation is that Liberty violated Title VII by engaging in sex discrimination, and the question to be certified is whether Liberty may be exempt from the prohibition on sex discrimination under Sections 702 and/or 703 as a religious institution. Thus, resolution of this question in Liberty's favor would be "completely dispositive of the litigation."

(ECF No. 57, 11.) Indeed, as the district court held, "there is no 'may' in this case." (*Id.*) Rather, "[i]t is a *near certainty* that Liberty would be saved from significant pretrial effort and expense if the Fourth Circuit were to reverse—since Liberty would be thus exempt from Title VII scrutiny as a matter of law." (*Id.* (emphasis added).)

## CONCLUSION

Because the district court's order involves a controlling question of law for which there is substantial grounds for difference of opinion, and this Court's adjudication of the appeal would terminate the litigation, the Motion should be granted.

/s/ Daniel J. Schmid
Mathew D. Staver, *Counsel of Record*
Horatio G. Mihet
Daniel J. Schmid
Avery B. Hill
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
(407) 875-0770
court@LC.org
hmihet@LC.org
dschmid@LC.org
ahill@LC.org
*Attorneys for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPE-FACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.     This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A). Not counting the items excluded from the length by Fed. R. App. P. 32(f), this document contains 5,162 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). This document has been prepared using Microsoft Word in 14-point Times New Roman font.

/s/ Daniel J. Schmid
Daniel J. Schmid
*Attorney for Defendant-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of May, 2025, a true and correct copy of the foregoing was filed via the Court's ECF filing system and therefore service will be effectuated by the Court's electronic notification system upon all counsel or parties of record.

/s/ Daniel J. Schmid
Daniel J. Schmid
*Attorney for Defendant-Appellant*