NO. 25-1228

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

ELLENOR ZINSKI,

*Plaintiff-Appellee,*

v.

LIBERTY UNIVERSITY, INC.,

*Defendant-Appellant.*

On Appeal from the United States District Court for the Western District of
Virginia, Case No. 6:24-cv-00041-NKM-CKM

# PLAINTIFF-APPELLEE'S MOTION TO DISMISS
# FOR LACK OF JURISDICTION

MATTHEW CALLAHAN
WYATT S.M. ROLLA
EDEN HEILMAN
ACLU FOUNDATION OF VIRGINIA
P.O. Box 26464
Richmond, VA  23261
(804) 644-8080

PAUL M. FALABELLA
SAMANTHA R. GALINA
BUTLER CURWOOD PLC
140 VIRGINIA STREET, SUITE 302
Richmond, VA 23219
(804) 648-4848

*Attorneys for Plaintiff-Appellee*

# TABLE OF CONTENTS

INTRODUCTION .......................................................................... 1

FACTS ....................................................................................... 3

PROCEDURAL BACKGROUND .................................................. 4

ARGUMENT .............................................................................. 5

I.   The District Court's Order Is Not A Final, Appealable Order.....................5

II.  The District Court's Order Is Not An Appealable Collateral Order...............7

   A.  The Order Does Not Fall Into Any Recognized Category of Appealable Collateral Orders ............................................................... 7

   B.  New Categories of Appealable Collateral Orders Are Disfavored ............. 9

   C.  The Order Does Not Meet Any of the *Cohen* Test's Three Requirements ....................................................... 11

      1.  The Order Does Not Conclusively Determine Disputed Questions ...... 13

      2.  The Order Does Not Resolve Questions Separate From The Merits .... 17

      3.  The Order Is Not Effectively Unreviewable on Final Judgment........... 19

CONCLUSION .......................................................................... 22

# TABLE OF AUTHORITIES

**CASES**

*Abney v. United States*, 431 U.S. 651 (1977) ..................................................... 7, 13

*Al Shimari v. CACI Int'l, Inc.*,
  679 F.3d 205 (4th Cir. 2012) ....................................................... passim

*Belya v. Kapral*, 45 F.4th 621 (2d Cir. 2022) ................................................. passim

*Billard v. Charlotte Cath. High Sch.*,
  101 F.4th 316 (4th Cir. 2024) ................................................................. 16

*Catlin v. United States*, 324 U.S. 229 (1945) ......................................................... 6

*Cobbledick v. United States*, 309 U.S. 323 (1940) ................................................... 6

*Cobra Nat. Res., LLC v. Fed. Mine Safety & Health Rev. Comm'n*,
  742 F.3d 82 (4th Cir. 2014) ............................................................ 12, 16

*Cohen v. Beneficial Industry Loan Corporation*,
  337 U.S. 541 (1949) ................................................................ 2, 7, 11

*Coomer v. Make Your Life Epic LLC*,
  98 F.4th 1320 (10th Cir. 2024) ........................................................... 17

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978) ........................................... 17

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
  511 U.S. 863 (1994) .................................................................... passim

*Doe v. Sidar*, 93 F.4th 241 (4th Cir. 2024) ............................................................. 1

*Ference v. Roman Cath. Diocese of Greensburg*,
  No. 2:22-CV-797, 2023 WL 3300499 (W.D. Pa. May 8, 2023) ........................ 16

*Firestone Tire & Rubber Co. v. Risjord*,
  449 U.S. 368 (1981) ............................................................................ 5

*Garrick v. Moody Bible Inst.*,
  95 F.4th 1104 (7th Cir. 2024) ............................................. 8, 14, 18, 20

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
  485 U.S. 271 (1988) ................................................................ 9, 12, 13

*Herx v. Diocese of Ft. Wayne-S. Bend, Inc.*,
  772 F.3d 1085 (7th Cir. 2014) ....................................................... 20, 21

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*,
  565 U.S. 171 (2012) .......................................................................... 20

*James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) ..................................................... 8

*Jamison v. Wiley*, 14 F.3d 222 (4th Cir. 1994) .............................................. 14, 16

*Midland Asphalt Corp. v. United States,*
    489 U.S. 794 (1989) ................................................................ 20, 21
*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ............................................. 7, 8
*Mohawk Indus. v. Carpenter*, 558 U.S. 100 (2009) ..................... 9, 10, 17
*Pelt v. Prince George's Cnty.*,
    No. 23-1279, 2024 WL 33698 (4th Cir. Jan. 3, 2024) ......................... 8
*Pullman Const. Indus., Inc. v. United States*,
    23 F.3d 1166 (7th Cir. 1994) ............................................................ 21
*Rux v. Republic of Sudan*, 461 F.3d 461 (4th Cir. 2006) ........................ 6
*Shoop v. Twyford*, 596 U.S. 811 (2022) ................................................ 10
*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007) ........................................................................... 6
*Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35 (1995) ..................... 9, 16
*Tucker v. Faith Bible Chapel Int'l*,
    36 F.4th 1021 (10th Cir. 2022) ............................................. 8, 14, 20
*United States v. Wampler*, 624 F.3d 1330 (10th Cir. 2010) ................. 13
*Van Cauwenberghe v. Biard,* 486 U.S. 517 (1988) .............................. 19
*Waetzig v. Halliburton Energy Servs., Inc.*, 145 S. Ct. 690 (2025) ......... 6
*Will v. Hallock*, 546 U.S. 345 (2006) ............................................... 9, 21

## STATUTES
28 U.S.C. § 1291 ............................................................... passim
28 U.S.C. § 1292(b) ........................................................... 4, 11
28 U.S.C. § 1292(e) ................................................................. 9
28 U.S.C. § 2072(c) ................................................................. 9

## RULES
Federal Rule of Civil Procedure 54(b) ................................... 11

## TREATISES
Jonathan Remy Nash, *Unearthing Summary Judgment's Concealed Standard of Review*, 50 U.C. Davis L. Rev. 87 (2016) ........................... 7

# INTRODUCTION

Defendant-Appellant Liberty University seeks, in this interlocutory appeal, to establish a new and unprecedented expansion of the collateral order doctrine and establish a circuit split with every other Court of Appeals to address the appealability of interlocutory orders related to religious organization defenses.

Plaintiff-Appellee Ellenor Zinksi was fired from her role as a full-time employee of the IT helpdesk at Liberty University for the express reason that she transitioned from living in accordance with the male sex assigned to her at birth to living consistent with her female gender identity. After her termination, she sued Liberty, alleging sex discrimination. Liberty moved to dismiss on five separate legal grounds related to its status as a religious organization,[1] all of which were denied by the district court.

In this appeal, Liberty claims an interlocutory appeal as of right under the collateral order doctrine of all the holdings of the district court's order denying its motion to dismiss. But the collateral-order doctrine is narrow and "should stay that way." *Doe v. Sidar*, 93 F.4th 241, 246 (4th Cir. 2024) (quoting *Digital Equip. Corp.*

---

[1] As noted in Liberty's docketing statement and the district court's order, those defenses were that Plaintiff's claim were barred by: 1) Sections 702 and 703 of Title VII; 2) the Religious Freedom Restoration Act ("RFRA"); 3) the ministerial exception; 4) the First Amendment freedom of expressive association; and 5) the ecclesiastical abstention doctrine. Dist. Ct., ECF 37 at 1-2; 4th Cir. No. 25-1228, ECF 11.

*v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)). Otherwise, the doctrine would "swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Digital Equip. Corp.*, 511 U.S. at 868. Permitting such an appeal as of right would open the floodgates to exactly the kind of indiscriminate appeals the Supreme Court has attempted to exclude. That is why all other circuit courts to consider the question have rejected the invitation to broaden the collateral order doctrine to include issues like those decided in the district court's order.

Nor do the issues in the district court's order meet the Supreme Court's three-part test for finding a new category of collateral order under *Cohen v. Beneficial Industry Loan Corporation*, 337 U.S. 541 (1949). First, Liberty's defenses were not conclusively determined by the district court's order because they can be revisited after factual development at the summary judgment stage or at trial. Second, Liberty's defenses are not separate from the merits of the case because they involve questions of fact that overlap with the elements of Ms. Zinski's employment discrimination claim. And third, Liberty's asserted defenses are not effectively unreviewable on final appeal, because they are not immunities from the burdens of litigation but rather immunities from liability.

Because the district court's order is not a final order, a recognized category of appealable collateral order, or a new category of collateral order meeting the

Supreme Court's *Cohen* test, this Court lacks jurisdiction over this appeal and must therefore dismiss it.

## FACTS

Ms. Zinski was hired in February 2023 as a full-time Information Services Apprentice at the IT helpdesk at Liberty University. Dist. Ct., ECF 1 at ¶ 10. When she was first hired, Ms. Zinski went by the name Jonathan Zinski. *Id.* Ms. Zinski succeeded in her role, assisting students and staff with IT issues, trouble-shooting problems with classroom equipment, and performing computer-related administrative tasks (e.g., refilling printer paper). *Id*. at ¶ 11. On July 5, 2023, Ms. Zinski notified Liberty that she identified as a transgender woman and she would be legally changing her name to Ellenor. *Id.* at ¶ 14. On August 8, 2023, Liberty called a meeting between Ms. Zinski, Chief Information Officer and Executive VP for Analytics, John Gauger, and Executive Vice President of Human Resources, Steve Foster. *Id.* at ¶ 18. Mr. Foster advised Ms. Zinksi that her employment was terminated effective immediately because of her transition from consistent with her sex assigned at birth to living consistent with her female gender identity. *Id.* Liberty provided Ms. Zinski with a letter outlining its decision and advising her that her employment was terminated. *Id.*

# PROCEDURAL BACKGROUND

Ms. Zinski filed a single count lawsuit alleging sex discrimination under Title VII. Dist. Ct. ECF 1. In response to Plaintiff's complaint, Liberty filed a motion to dismiss raising five affirmative defenses related to statutory and constitutional protections for religious autonomy. Dist. Ct. ECF 11. The court denied the Defendant's Motion to Dismiss in its entirety. Dist. Ct. ECF 37.

Liberty sought and received a certification from the district court to petition this Court to hear an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Dist. Ct., ECF 41, 58. Liberty's petition to this Court to hear the discretionary interlocutory appeal is currently pending in a separate appeal. *See* 4th Cir. No. 25-142, ECF 2. Ms. Zinski is filing an Answer to Defendant's Petition on that docket concurrent with this Motion.

Simultaneous with its petition to the district court under § 1292(b), Liberty filed a notice of appeal to this Court, claiming an appeal as of right under the collateral order doctrine. Dist. Ct., ECF 40. Because Liberty lacks any right of appeal from the district court's order, Ms. Zinski now files this Motion to Dismiss Liberty's collateral order appeal for lack of jurisdiction.

**ARGUMENT**

Because the district court's order denying Liberty's motion to dismiss (the "Order") is not an appealable final order and does not fall under the collateral order doctrine, this Court lacks jurisdiction and must dismiss this appeal.

In fact, none of the five religious freedom defenses asserted by Liberty grant it a right of immediate appeal. The universe of acceptable collateral orders is narrow and, by the instruction of the Supreme Court, is supposed to stay that way. None of these five defenses establishes a right of immediate appeal, and other courts that considered arguments similar to Liberty's have rejected them. The three-factor test the Supreme Court has established to evaluate claims of new collateral orders – the "*Cohen* factors" – do not favor an appeal here. And because no part of the district court's Order is an appealable collateral order, this Court lacks jurisdiction over this appeal and must dismiss.

## I. The District Court's Order Is Not A Final, Appealable Order

This Court's jurisdiction is confined, with few exceptions, to reviewing "final decisions" of the district courts. *See* 28 U.S.C. § 1291. A final decision is one where the district court has fully decided all claims and the only thing that remains is the execution of the judgment. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981). Where this Court lacks jurisdiction, "it can proceed no further and

must dismiss the case on that account." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 434 (2007).

Finality is a critical part of a functioning judicial system. It "prevents interlocutory appeals from unduly impairing the resolution of civil and criminal cases at the trial level." *Waetzig v. Halliburton Energy Servs., Inc.*, 145 S. Ct. 690, 698 (2025). Without a strong finality doctrine, "too many trial court rulings could be appealed, and 'the orderly progress of a cause' would be halted while the appellate court considered all sorts of 'questions which have happened to cross the path of such litigation.'" *Id.* (quoting *Cobbledick v. United States*, 309 U.S. 323, 326 (1940)).

A district court's order denying a motion to dismiss, like the Order at issue here, is not such a final decision. *See Rux v. Republic of Sudan*, 461 F.3d 461, 474 (4th Cir. 2006) (citing *Catlin v. United States*, 324 U.S. 229, 233 (1945)). This is true because denying a motion to dismiss merely means that the case will proceed toward final judgment. *Id.* The appealability of the Order thus turns on whether it falls into one of the narrow exceptions to the finality doctrine. As laid out below, it does not.

## II. The District Court's Order Is Not An Appealable Collateral Order

### A. The Order Does Not Fall Into Any Recognized Category of Appealable Collateral Orders

Section 1291 permits immediate appeals of a "small class" of nonfinal, "collateral" orders. *Cohen*, 337 U.S. at 546. Collateral orders "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* Only that portion of a court's order that qualifies as a collateral order is subject to an appeal; other issues in an order "are appealable if, and only if, they too fall within [the] collateral-order exception to the final-judgment rule." *Abney v. United States*, 431 U.S. 651, 663 (1977).

Perhaps the most common category of collateral orders that are immediately appealable is denials of qualified to immunity to government officials in civil rights actions. Jonathan Remy Nash, *Unearthing Summary Judgment's Concealed Standard of Review*, 50 U.C. Davis L. Rev. 87, 103 (2016). Denials of qualified immunity are considered collateral orders because qualified immunity "is an immunity from suit" and is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526–27 (1985). Other existing categories of collateral appeals are of a similar character. For example, orders denying anonymity to litigants are immediately appealable because, once a litigant's identity

is revealed, the damage cannot be undone. *See James v. Jacobson*, 6 F.3d 233, 237–38 (4th Cir. 1993). The same is true for the "absolute immunity" such as that held by the Attorney General of the United States, because "the essence of absolute immunity is its possessor's entitlement to not have to answer for his conduct in a civil damages action." *Pelt v. Prince George's Cnty.*, No. 23-1279, 2024 WL 33698, at *1 (4th Cir. Jan. 3, 2024) (quoting *Mitchell*, 472 U.S. at 525).

No court has found that religious affirmative defenses like those Liberty raised in its motion to dismiss come with such an immunity from suit that guarantees a party a right of interlocutory appeal. In fact, appellate courts that have been presented with such an argument have uniformly rejected it. *See Garrick v. Moody Bible Inst.*, 95 F.4th 1104, 1112 (7th Cir. 2024) (rejecting argument that the court should "expand the collateral order doctrine by creating a new category never recognized by the Supreme Court or any other circuit" by permitting interlocutory appeal of church autonomy defense); *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1047 (10th Cir. 2022) ("We conclude that the 'ministerial exception' is not analogous to qualified immunity and does not immunize religious employers from the burdens of litigation itself."); *Belya v. Kapral*, 45 F.4th 621, 630 (2d Cir. 2022) ("Neither this Court nor the Supreme Court has found or even suggested that district court orders like the ones Defendants appeal from [denying the church autonomy defense] fall within the collateral order doctrine."). To find such a right of collateral appeal for

these defenses, this Court would have to break new ground and split with these circuits.

### B. New Categories of Appealable Collateral Orders Are Disfavored

While the collateral order doctrine has always been narrowly interpreted, *see Will v. Hallock*, 546 U.S. 345, 350 (2006), the Supreme Court has announced a strong disfavor for expanding the doctrine to new areas of law. *See, e.g.*, *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 113 (2009).

In large part, this is due to judicial respect for Congress's action in this space. In 1988, after years of patchwork collateral-order decisions, Justice Scalia diagnosed that the courts' "finality jurisprudence is sorely in need of further limiting principles." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 292 (1988) (Scalia, J., concurring). Congress responded by amending the Rules Enabling Act to empower the Supreme Court to issue rules defining which orders should be considered final and appealable under Section 1291. *See* 28 U.S.C. § 2072(c) (1990). Two years later, Congress gave the Supreme Court the power to specify through rulemaking which categories of non-final, interlocutory orders should be immediately appealable. *See* 28 U.S.C. § 1292(e) (1992). The Supreme Court has held that Congress' preference for the rulemaking process "warrants the Judiciary's full respect." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 48 (1995).

Given this clear Congressional intention to direct new interlocutory appeals to the rulemaking process, Justice Thomas has argued that the courts should categorically cease relying on *Cohen* and the collateral-order doctrine as a basis for expanding appellate jurisdiction; instead, the rulemaking process should be the *only* source of new categories of interlocutory appeals. *See Mohawk*, 558 U.S. at 115 (Thomas, J., concurring in part and in the judgment); *cf. Shoop v. Twyford*, 596 U.S. 811, 831 (2022) (Gorsuch, J., dissenting). Although the Court has continued to find a small set of new collateral orders, it has emphasized that "any further avenue for immediate appeal of [interlocutory] rulings should be furnished, if at all, through rulemaking, with the opportunity for full airing it provides." *Mohawk*, 558 U.S. at 114.

Such reticence is especially important because of the disruption to the district court that would occur from establishing a right of appeal here. Because defendants can raise these religious appeals at multiple stages of the case, a right of appeal would open the door to parties appealing on their religious defenses at the motion-to-dismiss stage, the summary-judgment phase, and after trial, at a minimum. Such appeals would not only prejudice the plaintiffs in such matters as their claims go unresolved through appeal after appeal, they would also clog the dockets of both the district and appellate courts, keeping cases on their dockets for years longer than is necessary without such a rule.

There is also "no need" for expanding the appealable collateral orders because "[t]he "safety valve" of discretionary interlocutory review under 28 U.S.C. § 1292(b) is frequently a 'better vehicle for vindicating [certain] serious ... claims than the blunt, categorical instrument of [a] § 1291 collateral order appeal.'" *Al Shimari v. CACI Int'l, Inc.*, 679 F.3d 205, 214 (4th Cir. 2012) (en banc) (quoting *Digital Equip. Corp.,* 511 U.S. at 883). Indeed, Liberty availed itself of such a safety valve; Liberty contemporaneously seeks an interlocutory appeal pursuant to § 1292(b) for the Order at issue in this appeal. 4th Cir. No. 25-142, ECF 2. Aside from § 1292(b), other paths of interlocutory appellate review are available by a petition for mandamus or direct entry of a final judgment under Federal Rule of Civil Procedure 54(b). These other paths of review are adequate sources of appellate review in the cases where such review is appropriate without opening the floodgates to appeals as of right for any party asserting a religious liberty defense.

The fact that the Order presents entire novel grounds for appeal is reason enough to reject it. But, as laid out below, the Order fails to meet the minimum requirements announced by the Supreme Court for a collateral order.

## C. <u>The Order Does Not Meet Any of the *Cohen* Test's Three Requirements</u>

The Supreme Court has applied a test, first announced in the 1949 case *Cohen v. Beneficial Industry Loan Corporation*, 337 U.S. 541 (1949), to determine if a category of orders meets the minimum legal requirements of an immediately

appealable collateral order. The *Cohen* test permits immediate appeal of a district court's order only if it:

(1) "conclusively determine[s] the disputed question" in the lawsuit;

(2) "resolve[s] an important issue completely separate from the merits of the action"; and

(3) is "effectively unreviewable on appeal from final judgment."

*Gulfstream Aerospace Corp.*, 485 U.S. at 276 (internal quotation marks and citation omitted).[2] A collateral order must satisfy all three prongs – failing to meet even one of them is fatal to appealability. *See id*. at 278; *Cobra Nat. Res., LLC v. Fed. Mine Safety & Health Rev. Comm'n*, 742 F.3d 82, 89 n.12 (4th Cir. 2014).

In evaluating whether an order meets the *Cohen* test, the court's focus "is not on the particular order at issue, but rather on the 'entire category' of orders to which it belongs." *Id*. at 87-88 (quoting *Digital Equip. Corp.*, 511 U.S. at 868). Even if an injustice may be avoided by granting an appeal in a specific case, the Court must not deviate from its categorical analysis. *Id*.

When a single order presents multiple issues, the appellate court has jurisdiction only over the portion of the order that is subject to a collateral appeal.

---

[2] While case law has sometimes identified a fourth criterion, whether the appeal "raises a serious, unsettled question of law," the Fourth Circuit has held that this criterion is implicitly contained in the three *Cohen* requirements. *See Cobra Nat. Res., LLC v. Fed. Mine Safety & Health Rev. Comm'n*, 742 F.3d 82, 87 n.10 (4th Cir. 2014).

"*Every* issue presented in an interlocutory appeal must 'fall within *Cohen's* collateral-order exception' before [a court] may review its merits; the courts of appeals possess no 'pendent' jurisdiction permitting them to decide collateral issues that fail to meet *Cohen*'s test." *United States v. Wampler*, 624 F.3d 1330, 1335 (10th Cir. 2010) (Gorsuch, J.) (quoting *Abney*, 431 U.S. at 663).

Here, Liberty asserts in its docketing statement that it intends to submit to this Court all five of the affirmative defenses ruled on by the district court in its motion to dismiss. 4th Cir. No. 25-1228, ECF 11. The only path for appellate review of all five of these defenses would be for each defense to have its own categorical claim on immediate appeal as a collateral order. Yet, as noted below, none of the issues that Liberty seeks to appeal through the Order meet any of the *Cohen* test's requirements. Because an appealable issue must satisfy all three requirements, each failure to meet a prong of the test is an independent reason why this Court lacks jurisdiction over this appeal and must dismiss.

### 1. <u>The Order Does Not Conclusively Determine Disputed Questions</u>

To be appealable under the *Cohen* test, an issue must have been "conclusively determined" by the district court. *Gulfstream Aerospace Corp.*, 485 U.S. at 276. The Supreme Court has held that "inherently tentative" orders, which a district court "will expect to revisit and reassess . . . in light of events occurring in the normal course of litigation" are not conclusively determined for purposes of the *Cohen* test.

*Id.* at 278. "A question in dispute cannot be said to have been conclusively resolved if a district court 'ma[kes] clear that its decision [is] a tentative one, ... and that it might well change its mind" after further proceedings.'" *Al Shimari*, 679 F.3d at 220 (en banc) (quoting *Jamison v. Wiley*, 14 F.3d 222, 230 (4th Cir. 1994)).

The district court did not conclusively determine the issue in question for four of the five affirmative defenses raised by Liberty. The denial of a motion to dismiss on the basis of an affirmative defense is an inherently tentative order that courts have held does not qualify for interlocutory appeal. Although the district court denied Liberty's motion to dismiss, nothing precludes Liberty from raising its affirmative defenses again at a later stage of the litigation. As the Second Circuit held in rejecting a collateral appeal of a church-autonomy defense at the motion-to-dismiss stage, "the orders [appealed from] are not conclusive because they do not bar any defenses, they did not rule on the merits of the church autonomy defense, and they permit Defendants to continue asserting the defense." *Belya*, 45 F.4th at 631; *accord Garrick*, 95 F.4th at 1114 (finding rejection of church autonomy defense at motion-to-dismiss stage was not conclusive for purposes of *Cohen* test); *see also Tucker*, 36 F.4th at 1046–47 (holding a denial of summary judgment was not conclusive because triable factual disputes over the application of the ministerial exception remained).

While this Court's analysis should remain categorical and not focus on the specifics of the order in question in this appeal, the district court's own holdings repeatedly emphasized the inherently tentative nature of its rulings by emphasizing that they applied solely "at this stage of litigation," *i.e.*, the motion-to-dismiss stage. *See, e.g.,* Dist. Ct., ECF 37 at 45 ("RFRA provides no defense at *this stage of litigation*") (emphasis added); *id.* at 50 ("The ministerial exception does not provide an affirmative defense to liability at *this stage of litigation*.") (emphasis added); *id.* ("Thus, at *this stage of litigation*, Liberty cannot claim any expressive association defense to Title VII liability.") (emphasis added) *id.* at 68-69 (declining to dismiss under the ecclesiastical abstention doctrine based on the contents of "Zinski's *complaint*" and because "it is *not clear* that Zinski" maintains any spiritual function) (emphasis added).

The district court explicitly stated that its holdings depended on factors such as the fact that "the ministerial exception is a defense which is most properly evaluated with the benefit of discovery or more extensive briefing, *i.e.*, at summary judgment," and referred to its holding in the Order as "preliminarily address[ing] the question" of the applicability of ministerial exception. *Id.* at 47. This is the district court's prerogative; "[f]undamentally, a court is entitled to have before it a proper record, sufficiently developed through discovery proceedings, to accurately assess any claim[.]" *Al Shimari*, 679 F.3d at 220 (en banc). Indeed, courts routinely rule on

such defenses at the motion for summary judgment phase of the case with a full record. *See, e.g., Billard v. Charlotte Cath. High Sch.*, 101 F.4th 316, 323 (4th Cir. 2024) (considering appeal of summary judgment entered as to defenses of ministerial exception, Title VII Section 702, and First Amendment freedom of association in an employment case). Where, as here, "a court . . . expressly holds open the possibility of reconsideration, a collateral order should not be authorized." *Cobra Nat. Res., LLC*, 742 F.3d at 88 (citing *Swint,* 514 U.S. at 42 and *Jamison,* 14 F.3d at 230).

Because of the categorical nature of the *Cohen* test, even the district court's ruling on Liberty's Section 702 and 703 defenses fails to qualify for this prong. While the district court's ruling on those defenses in this specific Order did not depend on any undecided facts, many such rulings *will* require factual development to be decided. *See, e.g., Ference v. Roman Cath. Diocese of Greensburg*, No. 2:22-CV-797, 2023 WL 3300499, at *3 (W.D. Pa. May 8, 2023) (holding it would be "premature" for the court to consider Title VII religious defenses in a motion to dismiss because "[t]here is nothing in the record . . . regarding the 'religious organization' factors" of Sections 702 and 703, "the specific doctrines and beliefs at issue and whether the employment decision was rooted in those religious doctrines and beliefs"). Because this Court must not "engage in an 'individualized jurisdictional inquiry'" on "the particular order at issue, but rather on the 'entire

category' of orders to which it belongs," the district court's ruling on Defendant's

Sections 702 and 703 defenses was not conclusively determined for purposes of the

*Cohen* test. *Mohawk*, 558 U.S. at 101 (quoting *Coopers & Lybrand v. Livesay*, 437

U.S. 463, 473 (1978) and *Digital Equip. Corp.*, 511 U.S. at 868).

Because these rulings cannot be said to "conclusively determine" the issues at

stake in the Order, none of those rulings are subject to collateral order appeal. And

because failing even a single prong of the *Cohen* test is fatal to appealability, the

Court need go no further in its analysis. However, as noted below, the issues in the

Order also do not satisfy either of the remaining *Cohen* factors.

## 2. <u>The Order Does Not Resolve Questions Separate From The Merits</u>

Liberty's asserted defenses cannot, at the motion-to-dismiss stage, be said to

be separate from the merits of Plaintiff's case as required by the *Cohen* test. "For an

issue to be completely separate from the merits, it must be 'significantly different

from the fact-related legal issues that likely underlie the plaintiff's claim on the

merits.' Issues that are 'completely separate from the merits' oftentimes include

these: qualified immunity, absolute immunity, and Eleventh Amendment

immunity." *Coomer v. Make Your Life Epic LLC*, 98 F.4th 1320, 1324-1325 (10th

Cir. 2024) (internal citations omitted). By contrast, a defense that claims the merits

of the case are involved with Liberty's religious rights requires factual development.

In a "pre-discovery posture," the district court cannot hold conclusively whether the facts will ultimately permit the application of Liberty's religious defenses or not; accordingly, "it is too soon to say" whether a religious defense is entwined with the merits at the motion-to-dismiss stage. *Belya*, 45 F.4th at 632 (holding that a pre-discovery invocation of the church autonomy defense is not separable from the merits of the action for purposes of interlocutory appeal).

Even if Liberty could show that such facts are not necessary to decide some or all of its defenses in this case, that would not save the Order from failing this prong of the *Cohen* test. Because the collateral-order doctrine makes entire categories of claims appealable, the key question is whether these religious defenses as a class are severable from the merits in every case in which they are invoked. They are not. For example, the Seventh Circuit rejected a collateral order appeal in *Garrick v. Moody Bible Institute* in part because "the viability of [the defendant's church autonomy] defense depends upon the veracity of [the plaintiff's] allegations related to pretext, so the defense is not separate from the merits of [the plaintiff's] claim." 95 F.4th at 1115; *see also Belya*, 45 F.4th at 632–33 (holding that church autonomy defense was not separate from the merits for purposes of the *Cohen* test, even though "it is possible that, in some circumstances, the church autonomy doctrine can present questions separable from the merits" of plaintiff's claim).

Accordingly, Liberty has not shown conclusively that its religious defenses are separable from the merits of Plaintiff's claims for purposes of this interlocutory appeal and the Order therefore does not qualify as an immediately appealable collateral order.

### 3. The Order Is Not Effectively Unreviewable on Final Judgment

Liberty also fails to satisfy the third prong of the *Cohen* three-factor test because none of its defenses are unreviewable on final judgment. "The 'critical question' in determining whether the right at issue is effectively unreviewable in the normal course 'is whether the essence of the claimed right is a right not to stand trial'—that is, whether it constitutes an immunity from suit." *Al Shimari*, 679 F.3d at 214 (en banc) (quoting *Van Cauwenberghe v. Biard,* 486 U.S. 517, 524 (1988)). By contrast, a "defense to liability" "can be vindicated just as readily on appeal from the final judgment, and the collateral order doctrine does not apply." *Id*. The mere fact "[t]hat a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment" does not justify a collateral appeal. *Digital Equip. Corp.,* 511 U.S. at 872 (cleaned up).

Parties asserting a right of collateral appeal often try to frame the asserted religious rights as a "right not to be tried" and attempt to extend this into a right for religious institutions to be wholly free from the burdens of litigation. Yet the Supreme Court has noted that, in assessing whether the right sought to be protected

constitutes a true immunity and not merely a defense, "§ 1291 requires [the court] of appeals to view claims of a 'right not to be tried' with skepticism, if not a jaundiced eye." *Digital Equip. Corp.,* 511 U.S. at 873. "One must be careful ... not to play word games with the concept of a 'right not to be tried,' as "virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a right not to stand trial." *Al Shimari* (en banc) (quoting *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 801 (1989) and *Digital Equip. Corp.,* 511 U.S. at 873).

Despite these repeated attempts by litigants, none of the rights asserted here qualify as unreviewable upon final judgment. The ministerial exception, for example, "operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 195 n.4 (2012). Similarly, "[t]he church autonomy doctrine provides religious associations neither an immunity from discovery nor an immunity from trial on secular matters." *Belya*, 45 F.4th at 633; *accord Garrick*, 95 F.4th at 1116. Rather, "the First Amendment serves more as 'an ordinary defense to liability.'" *Belya*, 45 F.4th at 633 (quoting *Herx v. Diocese of Ft. Wayne-S. Bend, Inc.*, 772 F.3d 1085, 1090 (7th Cir. 2014)); *see also Tucker*, 36 F.4th at 1047 (holding ministerial exception "does not immunize religious employers from the burdens of litigation itself" and "can be effectively reviewed and corrected through an appeal

after final judgment").There is even less support for an argument that purely statutory defenses like Sections 702 and 703 of Title VII or RFRA are intended to provide the kind of immunity from suit that would render them unreviewable on final judgment. Aside from appeals like qualified immunity that involve the functioning of the government, "[o]nly an 'explicit statutory or constitutional guarantee that trial will not occur' creates the sort of right that supports immediate review." *Pullman Const. Indus., Inc. v. United States*, 23 F.3d 1166, 1169 (7th Cir. 1994) (quoting *Midland Asphalt*, 489 U.S. at 801). Neither RFRA nor Title VII contains any such language. The Seventh Circuit found "no authority for the proposition that [Section 702 provides] an immunity from the burdens of trial rather than an ordinary defense to liability." *Herx*, 772 F.3d at 1091. Sections 702 and 703 merely protect a religious employer's interest in avoiding an adverse judgment—it does nothing to shield an employer from litigation altogether. *See id*. at 1090 (citing *Hallock*, 546 U.S. at 352). Any incorrect rulings in the district court's orders are therefore fully reviewable on appeal.

In sum, none of the issues contained in the district court's Order meet the requirements for a collateral order. For that reason, this Court lacks jurisdiction over this interlocutory appeal from a non-final judgment and must dismiss it.

**CONCLUSION**

For the foregoing reasons, this Court should dismiss Liberty's appeal for lack of jurisdiction.[3]

**STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to Local Rule 34(a), Plaintiff-Appellee Ms. Zinski submits her opinion that oral argument should be heard on this Motion. The issues at stake are complex and have the potential to greatly impact the functioning of the federal courts in cases, including by creating a new category of appealable order. Accordingly, Plaintiff-Appellee believes oral argument in this matter would assist the Court.

---

[3] The day this Motion was filed, the D.C. Circuit joined the Second, Seventh, and Tenth Circuits in holding that denial of a church autonomy defense in an interlocutory order was not immediately appealable under the collateral order doctrine, relying on many of the same arguments advanced in this Motion. *See, generally, O'Connell v. U.S. Conf. of Cath. Bishops*, No. 23-7173, 2025 WL 1198433 (D.C. Cir. Apr. 25, 2025).

Dated: April 25, 2025                      Respectfully submitted,


                                           /s/ Matthew Callahan


MATTHEW CALLAHAN                           PAUL M. FALABELLA
WYATT S.M. ROLLA                           SAMANTHA R. GALINA
EDEN HEILMAN                               BUTLER CURWOOD PLC
ACLU FOUNDATION OF VIRGINIA                140 VIRGINIA STREET, SUITE 302
P.O. Box 26464                             Richmond, VA 23219
Richmond, VA  23261                        (804) 648-4848
(804) 644-8080

                                           *Attorneys for Plaintiff-Appellee*

**LOCAL RULE 27(a) STATEMENT**

Counsel for Defendant-Appellant Liberty University, Inc. has been informed of the intended filing of this Motion to Dismiss.

Counsel for Defendant-Appellant has indicated their intention to file a response in opposition.

April 25, 2025                                  _/s/_ Matthew W. Callahan

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 5,189 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


April 25, 2025                              */s/* Matthew W. Callahan

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2025, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

*/s/* Matthew W. Callahan