NO. 25-1228

_____

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

ELLENOR ZINSKI,

*Plaintiff-Appellee*,

v.

LIBERTY UNIVERSITY, INC.,

*Defendant-Appellant*.

_____

On Appeal from the United States District Court for the Western District of Virginia, Case No. 6:24-cv-00041-NKM-CKM

_____

**PLAINTIFF-APPELLEE'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION**

MATTHEW CALLAHAN
WYATT S.M. ROLLA
EDEN HEILMAN
ACLU FOUNDATION OF VIRGINIA
P.O. Box 26464
Richmond, VA 23261
(804) 644-8080

PAUL M. FALABELLA
SAMANTHA R. GALINA
BUTLER CURWOOD PLC
140 VIRGINIA STREET, SUITE 302
Richmond, VA 23219
(804) 648-4848

*Attorneys for Plaintiff-Appellee*

## I. The District Court's Order Does Not Fall into an Established Category of Appealable Collateral Order.

As noted in Ms. Zinski's Motion to Dismiss this appeal, the set of existing collateral orders is narrow and not to be expanded. In evaluating whether a collateral order falls under an existing exception, courts look at the substantive right being invoked has previously been held to qualify for a collateral appeal. For example, in *Doe v. Sidar*, this Court found "[t]he relevant category [] is district court orders denying requests for a physical or mental examination under Federal Rule of Civil Procedure 35." 93 F.4th 241, 245 (4th Cir. 2024); *cf. Al Shimari v. CACI Int'l, Inc.*, 679 F.3d 205, 218–19 (4th Cir. 2012) (en banc) (evaluating "in a categorical sense" the "denial of a preemption claim stemming from the combatant activities exception"). Accordingly, the relevant inquiry is tied to the the right at issue in this case and at this procedural posture.

Rather than follow this practice, Liberty seemingly advances its own, brand-new test for whether an order falls into an established category of collateral appeals:

- "First…[whether the order] involved defenses claimed to arise from the text of the United States Constitution" 4th Cir. No. 25-1228, ECF 21 at 8.
- "Second, [whether] the denial of a motion to dismiss on the textually grounded defense precluded [Liberty] from avoiding a trial the Constitution's text prohibited." *Id*. at 9.
- "Third, [whether] the denial of a motion to dismiss on such constitutionally grounded defenses 'involves a claim to a fundamental constitutional protection… whose resolution generally will have no bearing on the merits of the underlying action.'" *Id*. at 10 (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993)).

1

This is not a test followed by any court in considering whether an order qualifies within an existing category of collateral order appeal. Certainly, none of the cases cited by Liberty apply these factors or frame the inquiry this way.

In fact, no court has found that denial of a church-autonomy defense in an interlocutory order fits into any existing category of collateral appeal. The D.C. Circuit in *O'Connell v. United States Conference of Catholic Bishops* noted "there are presently less than ten categories of orders falling under the collateral order doctrine," none of which are applicable to cases involving interlocutory denial of church-autonomy defenses. 134 F.4th 1243, 1253 (D.C. Cir. 2025) (citing *Belya v. Kapral*, 45 F.4th 621, 629 n.5 (2d Cir. 2022)). Three other circuit courts have similarly held in published cases that no collateral order appeal is available for interlocutory denials of church-autonomy defenses. *See, generally, Belya*, 45 F.4th 621; *Garrick v. Moody Bible Inst.,* 95 F.4th 1104 (7th Cir. 2024); *Tucker v. Faith Bible Chapel Int'l,* 36 F.4th 1021 (10th Cir. 2022). The Eleventh Circuit, in an unpublished *per curiam* decision, has also joined them. *See, generally, Klein v. Oved*, No. 23-14105, 2024 WL 1092324 (11th Cir. Mar. 13, 2024). Liberty never cites to, distinguishes, or acknowledges the circuit courts that have ruled against this theory, even as it claims that orders denying church-autonomy defenses "[f]it [s]quarely" into recognized categories of collateral orders. 4th Cir. No. 25-1228, ECF 21 at 7.

Nor do the Supreme Court cases relied upon by Liberty aid it here. Each case involves a substantive right that is categorically different from Liberty's church-autonomy defenses. Each of those substantive rights also has a much clearer to claim to the kind of "immunity from suit" that qualifies it for a collateral appeal than Liberty's defenses do. *Helstiski v. Meanor*, 442 U.S. 500 (1979), for example, concerned the Speech or Debate Clause, the text of which explicitly states that "for any Speech or Debate in either House, [members of Congress] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. This right not to be questioned is nowhere found in the First Amendment. *Compare* U.S. Const. amend. I ("Congress shall make no law respecting the establishment of a religion, or prohibiting the free exercise thereof . . . ."). Similarly, the Eleventh Amendment state sovereign immunity at issue in *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, derives from text stating that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." 506 U.S. at 144 (quoting U.S. Const. amend. XI). This "withdrawal of jurisdiction," *id.*, is very different from the church-autonomy defenses at issue here. *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,* 565 U.S. 171, 195 n.4 (2012) ("We conclude that the [ministerial] exception [is] not a jurisdictional bar"). *Abney v. United States* concerned the right of a person not "to be twice put in

jeopardy of life or limb," a protection "against more than being subject to double punishments" but instead against "being twice put on trial for the same offense." 431 U.S. 651, 660 (1977) (quoting U.S. Const. amend. V).

Contrary to Liberty's assertions in its Response, this Court would be breaking new ground and creating a circuit split by finding a right of immediate appeal here. Because orders like the district court's do not fall into the existing categories of appealable collateral orders, this Court must reject Liberty's appeal.

II.     **The District Court's Order Does Not Meet the *Cohen* Requirements.**

Liberty is equally unpersuasive in arguing that the district court's order passes the rigorous test laid out by the Supreme Court for new categories of collateral orders in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949).

    A.     **The District Court's Order Does Not Conclusively Determine a Disputed Question of Law.**

Liberty does not dispute, as it cannot, that it will be able to raise its church-autonomy defenses to liability at summary judgment or at trial. Rather, Liberty claims that the district court has conclusively determined that Liberty must face "probing and intrusive inquiries in discovery" and "face trial" about its religious practices because the court denied Liberty's motion to dismiss. 4th Cir. No. 25-1228, ECF 21 at 16.

The district court did nothing of the kind. Merely because Liberty must litigate a case applying secular employment law does not mean that the district court will

4

become unconstitutionally embroiled in religious disputes. Where "neutral principles of law" govern a legal dispute involving a religious organization, a court can consider the case without infringing any constitutional rights. *See Jones v. Wolf*, 443 U.S. 595, 603-604 (1979). As the D.C. Circuit has noted, "[t]he church autonomy doctrine protects against judicial interference in ecclesiastical matters; it does not provide religious organizations with a blanket immunity from suit, discovery, or trial." *O'Connell*, 134 F.4th at 1258; *see also Belya*, 45 F.4th at 632. "[D]istrict courts have ample tools at their disposal to limit discovery, tailor jury instructions, and dismiss claims as necessary to safeguard against infringements of the church autonomy doctrine." *O'Connell* at 1256. In this case, the district court noted that it "need not glance at scripture, second-guess a religious tribunal, or put a civil stamp on religious doctrine" to proceed with the litigation because Ms. Zinski "here proceeds in a civil tribunal and invokes no form of law other than civil law." Dist. Ct., ECF 59 at 69. It is therefore hardly "conclusively determined" after the district court's order that Liberty will face unconstitutional intrusions into its religious affairs.

Liberty simply mis-states the law when it writes that "[c]ourts are jurisdictionally barred from intervening in disputes involving religious employment." 4th Cir. No. 25-1228, ECF 21 at 14. In fact, a unanimous Supreme Court held precisely the opposite in an employment discrimination case: "the

5

[ministerial] exception operates as an affirmative defense to an otherwise cognizable claim, **not a jurisdictional bar**." *Hosanna-Tabor Evangelical Lutheran Church & Sch.*, 565 U.S. at 195 n.4 (emphasis added). This holding has been recognized and applied by this Court on numerous occasions. *E.g., Billard v. Charlotte Cath. High Sch.*, 101 F.4th 316, 326 (4th Cir. 2024); *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 68 (4th Cir. 2023), *cert. denied sub nom. Liberty Univ., Inc. v. Bowes*, 144 S. Ct. 1030 (2024), and *cert. denied sub nom. Bowes Est. of Palmer v. Liberty Univ., Inc.*, 144 S. Ct. 1030 (2024); *Goldfarb v. Mayor of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

Liberty asks this Court to disregard the case law and instead adopt the construction of the ministerial exception advocated by Judge Richardson's concurring opinion in *Palmer v. Liberty University*. But not only did the panel majority hold in that case that Judge Richardson's assessment of the ministerial exception "is not authoritative in any way," 72 F.4th at 68 n.8, Judge Motz wrote separately to emphasize that it was "no mere application of existing precedent" but rather "a dramatic broadening of the ministerial exception that would swallow the rule." *Id.* at 74 (Motz, J., concurring) (citing *DeWeese-Boyd v. Gordon Coll.*, 163 N.E.3d 1000, 1017 (2021)). This Court is bound by the construction of the ministerial exception announced by the Supreme Court and this Court's own precedent. That precedent dictates that Liberty's church-autonomy defenses are not

the categorical, jurisdictional bar that Liberty asserts, but rather affirmative defenses to liability that are capable of assertion at future stages of the case.

Liberty does not otherwise refute Ms. Zinski's authority that denials of motions to dismiss are categorically tentative for purposes of this *Cohen* requirement. Accordingly, Liberty's argument fails at this prong of the *Cohen* test and therefore fails the entire test. *See Cobra Nat. Res., LLC v. Fed. Mine Safety & Health Rev. Comm'n*, 742 F.3d 82, 89 n.12 (4th Cir. 2014) (citing *S.C. State Bd. of Dentistry v. FTC*, 455 F.3d 436, 441 (4th Cir. 2006)). But even if it did not, Liberty's argument cannot meet either of the other two requirements of the *Cohen* test and fails independently on those grounds.

### B. The District Court's Order Is Not Separate from the Merits Of Ms. Zinski's Claim.

Whether or not an order is "separate from the merits" of a case, as required by the *Cohen* test, turns on a categorical examination of whether all such orders will be separate from the merits of the underlying cases. *See Cobra Nat. Res., LLC*, 742 F.3d at 87 (citing *Digital Equip. Corp. v. Desktop Direct,* 511 U.S. 863, 868 (1994)). Liberty neglects the categorical nature of this inquiry by focusing narrowly on the specifics of this case. In fact, many employment cases involving church-autonomy defenses will have factual and legal questions deeply entangled with the merits of a plaintiff's claims. *See, e.g., Ference v. Roman Cath. Diocese of Greensburg*, No. 2:22-CV-797, 2023 WL 3300499, at *3 (W.D. Pa. May 8, 2023). Even in this case,

where the district court noted that there were few factual disputes concerning Liberty's Title VII defenses, it also noted that many of its rulings may change at a later stage of the litigation. *See* 4th Cir. No. 25-1228, ECF 17 at 15. At the motion-to-dismiss stage and before factual development, church-autonomy defenses cannot be said to be categorically separate from the merits of an employment claim. *See Belya*, 45 F.4th at 632.

Nor does *McCarthy v. Fuller* help Liberty here. In *McCarthy*, the Seventh Circuit found that it had jurisdiction over an interlocutory denial of summary judgment where the district court indicated an intent to ask a jury to "take sides on issues of religious doctrine" – specifically, whether or not a woman was properly called a nun, a question for which the Catholic Church was the proper authority. 714 F.3d 971, 975 (7th Cir. 2013). The issue that was separate from the merits and therefore appealable in *McCarthy* was this risk of a "final judgment of a secular court resolving a religious issue." *Id*. at 976.

The district court here has indicated no intent to decide such religious questions. Whether or not Liberty can avail itself of its affirmative defenses is a legal question, not a religious question. Even in *McCarthy* itself, the court held it lacked interlocutory jurisdiction over a related "property dispute [that] can be resolved without getting into religious questions." *Id*. at 979. And the Seventh Circuit later rejected an interlocutory appeal of a church-autonomy defense to an employment

claim at the motion-to-dismiss stage, noting that the viability of the defense and the truth of the plaintiff's allegations were entwined. *Garrick*, 95 F.4th at 1116. *McCarthy* therefore provides no basis for jurisdiction over this interlocutory appeal.

### C. The District Court's Order Is Not Effectively Unreviewable on Final Judgment.

Liberty limits its argument on the third *Cohen* factor to the "transcendent value" and importance of the First Amendment and the ministerial exception, relying on the Supreme Court's analysis in *Digital Equipment Corporation v. Desktop Direct, Inc.* ("*Digital Equipment*"). 4th Cir. No. 25-1228, ECF 21 at 20-22. But Liberty misreads *Digital Equipment*.

The third prong of the *Cohen* test requires that an order be "effectively unreviewable after final judgment." The Court in *Digital Equipment* held that, for such a finding, it was *necessary* that the substantive right in question be important, not that it was *sufficient*. 511 U.S. at 865. In *Digital Equipment*, a corporation sought interlocutory appeal of an order vacating a settlement between private parties, invoking a "right not to go to trial" that the parties had included in the settlement agreement. *Id*. at 866. The Court held that it lacked jurisdiction over the appeal, noting that such a "privately conferred right" was inherently different from "rights . . . originating in the Constitution or statutes," which are important because they embody public policy. *Id.* at 879. The Court stopped far short of saying that every order concerning an important right was unreviewable after final judgment. In

fact, "the federal courts of appeals – and the Supreme Court – routinely reject parties' efforts to invoke the collateral order doctrine for a wide variety of important rights." *O'Connell*, 134 F.4th at 1260; *accord Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 108-9 (2009) ("We routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system.").

It is unsurprising, then, that the many cases Liberty cites for the importance of the First Amendment arise in different procedural postures; none has anything to say about the collateral order doctrine or the availability of interlocutory appeal. *Cf. Bigelow v. Virginia*, 421 U.S. 809, 816 (1975) (discussing First Amendment free speech overbreadth standing); *Dombrowksi v. Pfister*, 380 U.S. 479, 486 (1965) (same); *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937) (reversing criminal conviction for political activity); *Billard*, 101 F.4th at 333 (reviewing ministerial exception defense after entry of final judgment); *Legend Night Club v. Miller*, 637 F.3d 291, 303 (4th Cir. 2011) (discussing preliminary injunction standard). The importance of the First Amendment does not establish that any interlocutory order concerning it is entitled to immediate appeal, nor do these cases hold otherwise.

In fact, as the many circuit courts to consider this question have all held, the denial of a church-autonomy defense in an interlocutory order is effectively reviewable upon final judgment. *O'Connell*, 134 F.4th at 1255; *Garrick*, 95 F.4th at

1115–17; *Tucker*, 36 F.4th at 1047; *Belya*, 45 F.4th at 633. Liberty therefore cannot demonstrate that the district court's order meets the requirements of the *Cohen* test's third requirement and, therefore, this Court lacks jurisdiction over this appeal.

## CONCLUSION

For the foregoing reasons, this Court should dismiss this appeal for lack of jurisdiction.

Dated: May 15, 2025                                   Respectfully submitted,

/s/ Matthew Callahan

| | |
|---|---|
| MATTHEW CALLAHAN | PAUL M. FALABELLA |
| WYATT S.M. ROLLA | SAMANTHA R. GALINA |
| EDEN HEILMAN | BUTLER CURWOOD PLC |
| ACLU FOUNDATION OF VIRGINIA | 140 VIRGINIA STREET, SUITE 302 |
| P.O. Box 26464 | Richmond, VA 23219 |
| Richmond, VA 23261 | (804) 648-4848 |
| (804) 644-8080 | |

*Attorneys for Respondent-Plaintiff*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(C).

1. Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 2,594 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

May 15, 2025  /s/ Matthew W. Callahan

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2025, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

May 15, 2025                                             /s/ Matthew W. Callahan